UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| **RODNEY BRISTOW,** | Civ. No. 5:22-cv-307-KKC-EBA |
| **Plaintiff,** | |
| v. | **OPINION AND ORDER** |
| **LINK-BELT CRANES, LLC** | |
| **Defendant.** | |

*******************

This matter is before the Court on Defendant Link-Belt Crane's motion for summary judgment. (DE 67.) For the following reasons, the Court GRANTS the motion.

**I.   Background**

Defendant Link-Belt Cranes, LLC is an American industrial company headquartered in Lexington, Kentucky that develops and manufactures heavy construction equipment. Plaintiff Rodney Bristow is a former employee who now brings claims against Link-Belt for violations of the Age Discrimination in Employment Act ("ADEA") and the Kentucky's Civil Rights Act ("KCRA"). (DE 1.) Bristow alleges he was discriminated against and constructively discharged because of his age. (*Id.*) Link-Belt denies Bristow's allegations and claims that Bristow voluntarily resigned.

Bristow had been an employee of Link-Belt from 2006 up until his retirement at the end of 2021. (DE 28-1 at p. 31.) He started out as a welder in Bay 10. In 2008, he was promoted to Team Leader for his Bay 10 welding department. (*Id.* at 32.) In 2013, he was promoted to Production Supervisor of Bay 10. (*Id.*) He was then reassigned to Production Supervisor of

1

Bay 11, Assembly and Paint, where he served seven years. (*Id.* at 33.) Bristow was later moved to Bay 12, Lattice Bay, for cross training, a practice that Link-Belt regularly employed to educate employees on the Company's processes. Bristow testified that his job responsibilities for Bays 10, 11, and 12 were the same "for the most part," and there was no difference in pay, title, benefits, or prestige for any of the Bays. (*Id.* at 34.)

As Production Supervisor, Bristow reported directly to Steve Bowman, who was the Value Stream Manager, and Bowman reported directly to Mike Clevenger, the Director of Production. (*Id.* at 38.) Beginning around December 2020, Bowman and Clevenger began to observe performance deficiencies in Bristow's running of Bay 12. (DE 28-5 at p. 203.) His 2020 performance review, signed by Bristow, stated "Rod is starting to understand the lattice bay process. I would like to see him gain more knowledge about the materials/product, so we can be more proactive with shortages. Having a good understanding of the processes in your bay and what inventory is on hand will help the bay run smoother, with less downtime/recovery." (DE 28-6.) To aid his performance, Bowman and Clevenger started having daily 30-minute meetings with Bristow. (DE 28-3 at p. 44.) Link-Belt also provided Bristow with whiteboards to assist him in visualizing the production process so he could correct recurring mistakes. (*Id.* at 58.)

Despite these efforts, Bristow's performance continued to decline. In August 2021, Link-Belt discovered Bay 12's safety and process quality audits were significantly behind schedule. (DE 28-5 at p. 215.) On October 4, 2021, Bowman emailed Clevenger to report that Bristow continued to provide incorrect information about scheduling. (*Id.* at 216.) Bowman also went to the Director of Human Resources, Anita Neace, and informed her of Bristow's scheduling problems, associate issues, non-compliance with instructions, and inaccuracies. (*Id.*) Because of these issues, Link-Belt conducted an atypical mid-year evaluation on October 6, 2021. (*Id.*) The evaluation stated, "to date, Rod struggles to follow, report, and maintain a

lattice bay schedule. At times, he misreports weldments in his Bay. And in several instances, he doesn't know what he has in process throughout his Bay." (DE 28-7.)

Due to these performance issues, Bowman proposed moving Bristow from Bay 12 back to Bay 11. (DE 28-4 at p. 181.) Clevenger, Neace and Paul Culler, the Vice President of Manufacturing, agreed with the proposal. (*Id.*) Bristow's supervisors believed he performed better and communicated more effectively when he supervised Bay 11. (DE 28-5 at p. 217.) Bristow had extensive knowledge of Bay 11 and the scheduling was simplified there, which was one of Bristow's weaknesses. (*Id.* at 202.) Because of this, they decided to swap Bristow and John Huen, the Production Supervisor of Bay 11. At the time, Huen was thirty years old, and Bowman was fifty-seven.

On October 21, 2021, Bowman and Clevenger held a meeting with Bristow and Huen to inform them of the decision to swap their Bays. (DE 28-4 at p. 179.) At this meeting, Bristow alleges that Clevenger made age-based remarks, using the term "old dog" and saying, "It's time for some new blood in Lattice Bay." (DE 28-1 at p. 179.) Clevenger does not deny using the term "old dog," but claims he used it as a term of experience and said, "I'm an old dog. John's young blood, and he needs all three of us to help him with his training." (DE 28-2 at 19.)

Following this meeting, Bristow tendered a formal retirement notice on October 26, 2021. A few days later, he filed a complaint with HR regarding Clevenger's age-based comments. This was the first time Bristow reported any concerns regarding Clevenger to HR. Link-Belt investigated Bristow's allegations and issued a private reprimand to Clevenger since he made an age-related comment during the meeting.

Before and after the investigation, Neace provided Bristow with two separate opportunities to rescind his retirement notice. Bristow, however, instead gave Link-Belt an

3

ultimatum: fire Clevenger, or he would not revoke his retirement. Link-Belt declined, and Bristow retired at the age of 57.

Bristow claims that throughout his career with Link-Belt, Clevenger regularly harassed him and criticized him in front of other employees. Examples of this criticism include Clevenger chastising Bristow because his production numbers were not written on his board as required by Link-Belt, general criticism about production and the flow of the bay, admonition for storing parts along the aisle, and harassment over the "everyday grind." (DE 28-1 at 14-18.) On one occasion over five years ago, Bristow alleges that Clevenger yelled at him so much for leaving a boom on a test stand that he started throwing up, had a minor stroke, and spent three days in intensive care. (*Id.* at 14.) Bristow claims he would report these incidents to his immediate manager at the time, Robbie Marcrum, but Marcrum would tell Bristow that there was nothing he could do since Clevenger was his boss too. (*Id.* at 15.) Bristow never reported these incidents to HR. (*Id.* at 16.)

Bristow now brings claims against Link-Belt for age discrimination in violation of the Kentucky Civil Rights Act and a retaliation claim under the Age Discrimination in Employment Act. Link-Belt has moved for summary judgment on all claims.

    **II.**    **Analysis**

**A. Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden and must identify "those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and quotation marks omitted). All evidence, facts, and inferences must be viewed in favor of the non-moving party. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "In order to defeat a summary

judgment motion, . . . [t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Cleotex*, 477 U.S. at 324. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may treat that fact as undisputed. *See* Fed. R. Civ. P. 56.

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 477 U.S. at 248. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*, at 249. However, the non-moving party also "may not rest upon its mere allegations or denials" of the adverse party's pleadings, but rather "must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586)). Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

**B. Age Discrimination Claims**

The ADEA and KCRA prohibit an employer from discrimination based on an individual's age. 29 U.S.C. § 623; KRS 344.040(1)(a). The Kentucky Supreme Court "interpret[s] the civil rights provisions of KRS Chapter 344 consistent with the applicable federal anti-

5

discrimination laws." *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citation omitted).

The elements of a prima facie age discrimination claim under the ADEA and KCRA are that plaintiff (1) was at least 40 years old at the time of the alleged discrimination, (2) was subject to an adverse employment action, (3) was qualified for the position, and (4) was replaced by someone younger. *Steele v. Edward D. Jones & Co. L.P.*, 780 Fed. Appx. 313 (6th Cir. 2019). In this case, there is no dispute that elements 1, 2, and 4 are met. Accordingly, the Court will focus its analysis on whether Bristow was subject to an adverse employment action.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Voluntary resignation is not an adverse employment action unless the plaintiff can prove that he was constructively discharged. *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 554-55 (6th Cir. 2008).

In this case, Bristow points to his transfer from Bay 12 to Bay 11 as a significant change in employment status, and he claims he was constructively discharged. Bristow, however, has not pointed to sufficient evidence to support a finding that he experienced an adverse employment action. The reassignment from Bay 12 to Bay 11 was a lateral move. Barring unusual circumstances, a transfer at no loss of title, pay, or benefits does not amount to an adverse employment action. *Darnell v. Campbell County Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990) (citations omitted). According to Bristow himself, the roles of Production Supervisor of Bays 10, 11, and 12 were very similar. (DE 28-1 at 26-27.) They all involved the supervision of 15-18 people, there was no difference in pay, benefits, vacation time, hours, job expectations, or prestige. (*Id.* at 28). Bristow even testified that he "didn't mind the change."

6

(*Id.*) Accordingly, no reasonable juror could find that the lateral move amounted to a significant change in employment status.

Since Bristow cannot show that there was a significant change in his employment status, his age discrimination claims fail unless he can show that his resignation was due to constructive discharge. A constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)). To prove constructive discharge, a plaintiff must show (1) that the employer deliberately created intolerable working conditions as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit. *Logan v. Denny's*, 259 F.3d 558, 568-69 (6th Cir. 2001). Thus, both the employee's objective feelings and the employer's intent must be analyzed. *Id.* at 569.

When determining whether working conditions would be so intolerable to a reasonable person to compel resignation, Courts look to the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir, 2000). The Sixth Circuit has commented that to prove constructive discharge, the plaintiff must demonstrate that his working conditions were "hellish, or at least close to it." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 815 (6th Cir. 2020).

Bristow has shown neither that Link Belt created intolerable working conditions nor that it had the intention of compelling him to quit. To show intolerable working conditions, Bristow points to Clevenger's yelling and criticism of him in front of other employees. (DE

7

29.) The examples that Bristow provided of Clevenger's harassment, however, were all work-related, such as criticism over production flow, work in progress placement, and following Link-Belt's procedures. The Sixth Circuit has repeatedly held that an employer's criticism of an employee does not amount to constructive discharge – especially when the criticism is limited to a few isolated incidents. *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004) (calling an employee "incompetent" and a "whiner" in front of other employees is normally insufficient to establish constructive discharge); *see also Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 708 (6th Cir. 2012) (disparaging comments isolated to only a few incidents and by a few individuals do not alter working conditions). Although here Bristow claims the criticism occurred daily, the situations which Bristow complains of were not objectively intolerable enough to give rise to a constructive discharge claim.

Moreover, Bristow has failed to demonstrate that Link-Belt intentionally forced him to quit. Bristow only filed one HR complaint with Link-Belt towards the end of his tenure, and Link-Belt investigated the complaint immediately after. When his performance was declining, Link-Belt implemented daily meetings, additional performance reviews, and aids such as whiteboards to assist him. When Bristow notified the company that he was retiring, Link-Belt gave him the opportunity to rescind his retirement twice. Accordingly, the record is devoid of any indication that Link-Belt deliberately forced his resignation. *See Gorbe v. City of Lathrup Vill.*, 2022 U.S. App. LEXIS 11685 at *14-15 (6th Cir. Apr. 28, 2022) (granting summary judgment on constructive discharge claim because nothing in the record suggested that defendants' treatment of plaintiff was calculated to force resignation).

A reasonable juror could not find that Bristow's transfer to Bay 11 qualified as an adverse employment action or that his voluntary resignation amounted to a constructive discharge. Because of this, summary judgment is appropriate on Bristow's KRCA age discrimination claims.

8

### C. Retaliation Claim

Next, Bristow brings a claim of retaliation. To succeed on a retaliation claim under the ADEA, Bristow must show: (1) that he engaged in protected activity; (2) that Link-Belt had knowledge of his protected conduct; (3) that Link-Belt took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002). It is undisputed that Bristow engaged in a protected activity by complaining to HR about age-related comments by a supervisor and that Link-Belt knew he filed the complaint. However, as discussed above, no reasonable jury could find that Bristow suffered an adverse employment action. Accordingly, since he cannot meet the requisite elements, summary judgment will be granted in favor of Link-Belt on the retaliation claim.

### III. Conclusion

In accordance with the foregoing, the Court **ORDERS** Defendant's Motion for Summary Judgment (DE 28) is **GRANTED** and judgment is entered in favor of Defendant on all claims.

This 17th day of July, 2024.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY